IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

SOUTHWEST ANTENNA AND
TOWER, INC.,

      Plaintiff,

v.                                       Civil No. 03-909 WJ/RLP
                                       (consolidated with CIV 04-1126)

ROBERTS WIRELESS
COMMUNICATIONS, LLC, et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER ON DEFENDANTS' MOTION TO STRIKE AND DEFENDANTS' MOTION TO DISMISS

THIS MATTER comes before the Court pursuant to the Motion of Defendants Roberts Tower Company, LLC & Roberts Tower Company to Treat Certain Affidavit Evidence Tendered by Plaintiff as Inadmissible [Docket No. 23] and the Motion of Defendants Roberts Tower Company, LLC & Roberts Tower Company to Dismiss the Complaint for Lack of Personal Jurisdiction and Improper Venue [Docket No. 3 in Civil No. 04-1126]. Having considered the submissions of the parties, and being fully advised on the law, Defendants' motion to strike is granted in part and denied in part, and Defendants' motion to dismiss is granted in part and denied in part as follows.

**BACKGROUND**

Plaintiff Southwest Antenna and Tower, Inc. ("SWAT") is a New Mexico corporation that provides specialized contracting services to the telecommunications industry by erecting, maintaining and equipping telecommunications towers. Defendants in this matter are Roberts

Tower Company, LLC ("Roberts Tower"), Roberts Tower Company ("RTC") and Roberts Wireless Communications, LLC ("Roberts Wireless").  Pleadings filed by Roberts Tower and RTC indicate that RTC is the predecessor of Roberts Tower, and RTC ceased to exist when Roberts Tower became its successor in interest.  Roberts Tower and RTC admit that Roberts Tower assumed all liabilities of RTC at the time of the merger.

SWAT's first business dealings with any of the Defendants began when Roberts Wireless contracted with SWAT to erect a broadcast tower in Albuquerque, New Mexico sometime in 1999.  This contract came about at the initial urging of Rose Moore, a resident of Rio Rancho, New Mexico and an employee of Roberts Broadcasting Company.[1]  The contract was negotiated between Bert Gearhart, president of SWAT, and Rodger Martin, an employee of both Roberts Wireless and Roberts Broadcasting Company.  Much of the negotiation on this contract occurred in New Mexico.  Mr. Martin subsequently hired SWAT to work on at least one other broadcast tower in New Mexico.  These broadcast towers are still owned by Roberts Broadcasting Company.

During the time Mr. Martin was overseeing the SWAT work in New Mexico, he solicited SWAT to erect several broadcast towers in Missouri and Illinois on behalf of Roberts Wireless.  Much of the negotiation for this contract occurred in New Mexico.  In his dealings with SWAT, Mr. Martin did not personally emphasize the distinction among the various "Roberts" entities.  After the terms and details were negotiated between Mr. Gearhart and Mr. Martin, Mr. Gearhart went to Lake of the Ozarks and then to St. Louis, Missouri to discuss the contract with Steven C.

---

[1] Roberts Broadcasting Company is not a named defendant in this action.

Roberts.[2]  After SWAT began the work on towers in Missouri and Illinois, Mr. Martin and Mr. Gearhart had several discussions in New Mexico regarding the work in Missouri and Illinois. Mr. Martin was and continued to be SWAT's main contact with whichever of the Roberts entities with which SWAT was working.  According to SWAT's Complaint filed October 4, 2004,[3] it performed work under the contract, and there is an outstanding unpaid balance of $805,845.93 plus late charges and interest.  The Complaint alleges the subject matter jurisdiction of the federal court on the basis of diversity of citizenship under 28 U.S.C. § 1332.

SWAT alleges in the Complaint that it sent the invoices for its work in Missouri and Illinois to Roberts Wireless.  SWAT also alleges that, at the request of Roberts Wireless, it sent some of the invoices to Defendant RTC.  According to SWAT, Roberts Wireless merged with another corporation,[4] but transferred some of its assets to RTC prior to the merger.  These transferred assets included real estate and telecommunications towers on which SWAT had performed work and services.  Additionally, SWAT contends that RTC agreed to assume all existing and future "tower payables" of Roberts Wireless and that all vendors for "tower payables" incurred after June 30, 2000 were directed to invoice RTC.

---

[2]It is not clear from the submissions of the parties whether any formal written contract was finalized and executed, and, if so, whether execution of the contract occurred in New Mexico, Missouri, or elsewhere.

[3]SWAT's initial Complaint was filed August 5, 2003 and created Civil Case No. 03-909 WPJ/RLP.  The parties agreed to allow SWAT to file an Amended Complaint.  SWAT inadvertently filed the amended Complaint as an initial complaint in a new case, creating Civil Case No. 04-1126 RB/LFG which was subsequently consolidated into Civil Case No. 03-909 WPJ/RLP.  When the Court refers to the "Complaint" it is referring to the Complaint filed in Civil Case No. 04-1126 RB/LFG.

[4]This other entity, referred to by the parties as "the Alamosa companies" is not a party to this action.

Defendants RTC and Roberts Tower brought the instant motion to dismiss for lack of personal jurisdiction and lack of venue.  The motion argues that neither Roberts Tower nor its predecessor RTC is subject to the *in personam* jurisdiction of this Court.  The motion and accompanying affidavits with exhibits indicates that all of the purchase orders by which SWAT's services in Illinois and Missouri were purchased indicate that the purchaser was Roberts Wireless.  The exhibits also show that all of the change orders generated by SWAT regarding the work in Illinois and Missouri were directed to Roberts Wireless.  These purchase orders and change orders are dated between July 2000 and October 2000.

Defendants RTC and Roberts Tower acknowledge that Roberts Wireless was acquired by an outside entity, the Alamosa Companies, on or about February 14, 2001, and that some of the assets of Roberts Wireless were transferred to Roberts Tower.  According to Roberts Tower, it took title to the tower structures and sites in Missouri and Illinois.  Roberts Tower acknowledges that, by virtue of having acquired ownership of the sites, it acquired an interest in the tower construction projects on which SWAT was working.  Roberts Tower also acknowledges having communicated with SWAT employees due to its interest in the construction projects but maintains that the majority of the communication was with SWAT's Missouri office and with SWAT employees based in or near Missouri.  Roberts Tower denies having any contractual obligations toward SWAT.  Roberts Tower then provides evidence that neither Roberts Tower nor RTC has transacted any business in the State of New Mexico, has been registered to do business in New Mexico, has ever maintained a corporate presence in New Mexico, has ever had an office or mailing address in New Mexico, has had employees doing business physically in New Mexico, has owned or used any real or personal property in New Mexico, has had any

assets in New Mexico, has had an agent authorized to accept service of process in New Mexico, or placed advertisement or engaged in any promotional activities in New Mexico. The evidence submitted by Roberts Tower and RTC indicates that there is an entity called Roberts Broadcasting of New Mexico, LLC,[5] but the evidence also states that this entity is separate and distinct from Roberts Tower and RTC.

Roberts Tower argues that, even if it or RTC transacted any business in New Mexico, there is no nexus between SWAT's claims and such transaction of business. Roberts Tower further urges that this Court's exercise of personal jurisdiction over RTC or Roberts Tower would not comport with notions of due process because there are insufficient minimum contacts between these Defendants and the State of New Mexico. Roberts Tower and RTC contend that neither of them has directed any activities toward New Mexico that create a substantial connection with the state because their only contacts have been telephone calls and mail communications from outside the state to SWAT's New Mexico office. Even if there are sufficient minimum contacts, Roberts Tower argues that the exercise of personal jurisdiction over it or RTC would offend traditional notions of fair play and substantial justice because litigating in New Mexico would burden these Defendants.

Roberts Tower and RTC finally argue that, even if this Court may properly exercise personal jurisdiction over them, venue is not proper under 28 U.S.C. § 1391 because the Defendants do not "reside" in New Mexico and a substantial part of the events giving rise to SWAT's claim did not occur in New Mexico.

---

[5]Roberts Broadcasting of New Mexico, LLC is not a party to this litigation.

In response to the motion to dismiss, SWAT provides an affidavit by Rodger Martin in which he avers that "Roberts Broadcasting of New Mexico"[6] transacts business in New Mexico and owns assets in New Mexico. Mr. Martin's affidavit also indicates that a "substantial part" of the negotiations between Roberts Wireless and SWAT for the work in Missouri and Illinois occurred in New Mexico. Mr. Martin's affidavit testimony states that Roberts Wireless' assets were acquired in part by the Alamosa Companies with the remainder of the assets being transferred to Roberts Tower. In several paragraphs, Mr. Martin refers generally to "Roberts" as his employer, states that he was authorized by his employer to negotiate contracts, and states that his employer operates and owns businesses in New Mexico.

SWAT also offers the affidavit of Bert Gearhart and several attached exhibits in response to the motion to dismiss. Mr. Gearhart's affidavit indicates that he "believes" that Roberts Broadcasting of New Mexico, LLC was consolidated into Roberts Tower. To support this belief, Mr. Gearhart attaches an exhibit that appears to be a web page off the internet. This web page has "Roberts Tower Company" at the top of the page and states in the text that broadcast towers in New Mexico were added to the Roberts Tower Company roster. Several paragraphs of Mr. Gearhart's affidavit refer generally to "Roberts" as if it is a single entity and state that "Roberts" owns interests in New Mexico, and that Mr. Martin was a principal point of contact in New Mexico with "Roberts." Mr. Gearhart's affidavit testimony states that RTC assumed SWAT's outstanding bills when Roberts Wireless transferred title of certain telecommunications towers to RTC. In support of this assertion, Mr. Gearhart attaches as an exhibit to his affidavit four non-

---

[6]It is not clear whether this entity is the same as Roberts Broadcasting of New Mexico, LLC, but it is clear that this entity is not a party to this litigation.

consecutive pages of a document. According to Mr. Gearhart, these are selected pages of the Merger Agreement between Roberts Wireless and the Alamosa Companies. None of the four pages contains a date or signature, and the document is not authenticated in any way. Mr. Gearhart avows in his affidavit that "substantial and material" negotiations occurred in New Mexico regarding the work to be performed by SWAT in Missouri and Illinois.

Roberts Tower and RTC filed a motion their motion to strike the above portions of the Martin and Gearhart affidavits and exhibits. These Defendants urge that these portions of the affidavits are not based on personal knowledge, and that the exhibits are hearsay or are not properly authenticated.

**DISCUSSION**

I.   DEFENDANTS' MOTION TO STRIKE CERTAIN AFFIDAVIT EVIDENCE OFFERED BY PLAINTIFF SWAT

The fact that portions of an affidavit are not based on personal knowledge but are based on information and belief does not render the entire affidavit defective; rather a court gives no weight to those portions of an affidavit that are not based on personal knowledge. See Federal Deposit Ins. Corp. v. Oaklawn Apartments, 959 F.2d 170, 175 (10th Cir.1992); Blanchard & Co., Inc. v. Heritage Capital Corp., 1997 WL 757909 (N.D. Tex. 1997) (unpublished disposition) (citing Richardson v. Oldham, 12 F.3d 1373, 1378-79 (5th Cir.1994)). However, an affiant need not affirmatively state that the averments in his affidavit are based on personal knowledge as it is presumed that they are. Richard Nathan Corp. v. Mitsubishi Shoji Kaisha, Ltd., 41 F.Supp. 299, 300-301, (D.C.N.Y. 1941).

Hearsay is defined in the Federal Rules of Evidence as an out of court statement, including a written assertion, offered to prove the truth of the matter asserted. Fed. R. Evid. 801(a) and (c). Accordingly, copies of internet web pages offered to prove some matter asserted within those pages is hearsay. There is some dispute among various jurisdictions on whether a court may consider hearsay evidence in deciding a motion to dismiss for lack of personal jurisdiction or lack of venue. The majority of jurisdictions faced with the issue have decided that evidence submitted with regard to a motion to dismiss for lack of personal jurisdiction or venue must be admissible evidence. See Colt Studio, Inc. v. Badpuppy Ent., 75 F.Supp.2d 1104 (C.D. Cal. 1999); Nicosia v. De Rooy, 72 F.Supp.2d 1093 (N.D. Cal. 1999); Farmer Boys Catfish Kitchens Intern., Inc. v. Golden West Wholesale Meats, Inc., 18 F.Supp.2d 656 (E.D. Tex. 1998); Schaefer v. Cybergraphic Sys., Inc., 886 F.Supp. 921 (D. Mass. 1994); Strong v. RG Indus., Inc., 691 F.Supp. 1017 (S.D. Miss. 1988). However, the United States Court of Appeals for the Federal Circuit has suggested that hearsay evidence may be considered in determining the issue of personal jurisdiction. See Akro Corp. v. Luker, 45 F.3d 1541 (Fed. Cir. 1995); Beverly Hills Fan Co. v. Royal Sovereign Corp., 21 F.3d 1558 (Fed. Cir. 1994).

The Federal Rules of Evidence govern proceedings in this Court including civil proceedings. Fed. R. Evid. 101 and 1101. While there are some specific, enumerated situations in which the Federal Rules of Evidence do not apply, motions to dismiss for lack of personal jurisdiction and lack of venue are not among those enumerated exceptions. See Fed. R. Evid. 1101(d). Accordingly, the rules of evidence apply to submissions of the parties on Defendants' motion to dismiss for lack of personal jurisdiction and venue.

Roberts Tower and RTC's objections to various averments in Mr. Gearhart's affidavit in which Mr. Gearhart expresses his "belief" of certain facts are sustained and the Court will not consider them. These statements are not made on personal knowledge. The objections to those portions of the affidavit in which Mr. Gearhart refers to "Roberts" generally without distinguishing the entity to which he refers are also well taken. The Court will not make assumptions with regard to the specific entity to which Mr. Gearhart refers and will accordingly disregard these statements in the affidavit. Finally, the Court will not give weight to legal conclusions in Mr. Gearhart's affidavit so will disregard his averment that a "substantial and material" part of the negotiations occurred in New Mexico for the work SWAT performed in Missouri and Illinois.

Many of Roberts Tower and RTC's objections to portions of Mr. Martin's affidavit are similarly justified. In those portions in which Mr. Martin makes assertions with regard to "Roberts" generally, the Court will not assume the specific identity of the entity to which Mr. Martin refers. Accordingly, these assertions will be disregarded. The Court will similarly decline to consider Mr. Martin's statement that a "substantial part" of the negotiations between Roberts Wireless and SWAT occurred in New Mexico. However, the Court will consider Mr. Martin's testimony that Roberts Broadcasting of New Mexico transacts business in and owns assets in New Mexico as well as his testimony that Roberts Wireless' assets were acquired by the Alamosa Companies and Roberts Tower. While Mr. Martin does not affirmatively aver that these statements are made on his personal knowledge, it is presumed that they are, and there is nothing in Mr. Martin's affidavit indicating that they are based on his belief or information.

With regard to the exhibits submitted with Mr. Gearhart's and Mr. Martin's affidavits, the Court will not consider information contained in printed copies of internet website pages. This information is hearsay and unauthenticated. The Court also will not consider the pages of the alleged merger agreement between Roberts Wireless and the Alamosa Companies. While the document in its entirety might be admissible, the pages offered contain nothing that would indicate its authenticity.

In accordance with the above analysis, the Motion of Defendants Roberts Tower Company, LLC & Roberts Tower Company to Treat Certain Affidavit Evidence Tendered by Plaintiff as Inadmissible will be granted for the most part and denied in part.

## II.   DEFENDANTS' MOTION TO DISMISS

A plaintiff bears the burden of establishing that the exercise of personal jurisdiction over a defendant is proper, but, in the preliminary stages of litigation, this burden is light and a plaintiff need only make a prima facie showing of jurisdiction. Benton v. Cameco Corp., 375 F.3d 1070, 1074 (10th Cir. 2004); Doe v. Nat'l Med. Serv., 974 F.2d 143, 145 (10th Cir. 1992). In determining the facts necessary to establish jurisdiction, the district court must accept as true the allegations set forth in the complaint to the extent they are uncontroverted by a defendant's affidavits. Ten Mile Indus. Park v. Western Plains Serv. Corp., 810 F.2d 1518, 1524 (10th Cir. 1987). To the extent the parties present conflicting affidavits, all factual disputes are resolved in Plaintiff's favor. Id.

To obtain personal jurisdiction in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and the exercise of jurisdiction is consistent with due process limitations. Benton, 375 F.3D at 1075; Kuenzle v. HTM Sport-Und Freizeitgerate

10

AG, 102 F.3d 453, 455 (10th Cir. 1996). The New Mexico long-arm statute permits the courts within the state to exercise personal jurisdiction over a person as to any cause of action arising from the transaction of business within the state. N.M. Stat. Ann. 1978 § 38-1-16(A)(1). The statute provides that a court will only have personal jurisdiction when the cause of action arises from the transaction of business within the state. § 38-1-16(C). New Mexico courts apply a three-part test to determine whether they have personal jurisdiction over nonresident defendants: (1) the act must be enumerated in the long-arm statute; (2) plaintiff's cause of action must arise from the act; and (3) the acts of defendant must establish the minimum contacts necessary to satisfy due process. Salas v. Homestake Enterprises, Inc., 742 P.2d 1049, 1050 (N.M. 1987). New Mexico has interpreted the first and third prongs as coextensive with the federal constitutional due process requirements. F.D.I.C. v. Hiatt, 872 P.2d 879, 881 (N.M. 1994). Therefore, the state law and constitutional analyses for the first and third prong collapse into a single inquiry regarding the constitutional limitations on the exercise of personal jurisdiction over a defendant. Purple Onion Foods, Inc. v. Blue Moose of Boulder, Inc., 45 F.Supp.2d 1255, 1257 (D.N.M. 1999). A plaintiff's burden is thus to make a showing that a defendant has had sufficient minimum contacts with a state to satisfy due process standards. Benton, 375 F.3d at 1075 (citing OMI Holdings, Inc. v. Royal Ins. Co. of Canada, 149 F.3d 1086 (10th Cir. 1998)); Dobbs v. Chevron, U.S.A., Inc., 39 F.3d 1064, 1068 (10th Cir. 1994) (citing McGee v. Int'l Life Ins. Co., 355 U.S. 220, 222 (1957)). Additionally, a defendant's contacts must be such that the exercise of jurisdiction does not "offend traditional notions of fair play and substantial justice." United States v. Botefuhr, 309 F.3d 1263, 1272 (10th Cir. 2002).

Under due process principles, personal jurisdiction may be either general or specific. Benton, 375 F.3d at 1075; Botefuhr, 309 F.3d at 1271; Dobbs, 39 F.3d at 1068 (citing Helicopteros v. Hall, 466 U.S. 408 n. 9 (1984)).  Specific personal jurisdiction exists when a "defendant has purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities."  Benton, 375 F.3d at 1075 (quoting OMI Holdings, Inc., 149 F.3d at 1090-91); Botefuhr, 309 F.3d at 1271.  Under federal due process standards, general personal jurisdiction may exist even when a claim does not directly arise from a defendant's forum-related activities if a defendant's general contacts with the forum state are continuous and systematic.  Benton, 375 F.3d at 1075; Botefuhr, 309 F.3d at 1271-72.  However, the New Mexico long-arm statute requires that a cause of action arise from the transaction of business within the state.  Tercero v. Roman Catholic Diocese, 48 P.3d 50, 55 (N.M. 2002); CABA Ltd. Liability Co. v. Mustang Software, Inc., 984 P.2d 803, 812 (N.M. App. 1999).  Thus, there must be a "close relationship between the claimed transaction of business in [New Mexico] and the pled cause of action" CABA Ltd. Liability Co., 984 P.2d at 812-13; see also Rogers v. 5-Star Management, Inc., 946 F.Supp. 907, 911 (D.N.M. 1996) (Black, J.).

Roberts Tower and RTC have presented evidence that they were not involved in the negotiation of the contract between Roberts Wireless and SWAT and were not a party to that contract at its inception.  Their evidence also shows that neither entity has ever transacted any business in New Mexico and neither has had a presence in the state.  This evidence is uncontroverted by any competent evidence offered by SWAT.  Even if the Court were to accept SWAT's internet website evidence suggesting that Roberts Broadcasting of New Mexico, LLC was consolidated into Roberts Tower such that Roberts Tower owns substantial interests and

12

transacts business in New Mexico, SWAT's cause of action in this case did not arise from these activities and is not closely related to these activities.  Accordingly, it would seem clear that this Court cannot exercise personal jurisdiction over Roberts Tower or RTC.  However, the evidence is also clear that Roberts Wireless transferred assets to RTC and Roberts Tower that included the towers in Missouri and Illinois that were the subject of the contract between SWAT and Roberts Wireless.  The evidence also shows RTC and Roberts Tower acquired an interest in the construction projects being performed by SWAT and communicated with SWAT employees regarding these contracts.  SWAT's Complaint alleges that RTC assumed all existing and future "tower payables" of Roberts Wireless when the tower assets of Roberts Wireless were transferred to RTC.  This allegation is uncontroverted by any evidence submitted by Roberts Tower and RTC so must be accepted as true.  Thus, the Court must examine whether it may exercise personal jurisdiction over Roberts Tower and RTC under the successor corporation liability theory.

Under the successor corporation liability theory, a court may exercise personal jurisdiction over a corporation that would not ordinarily be subject to the court's jurisdiction if the corporation is a successor of a corporation that would be subject to jurisdiction in that court. See Patin v. Thoroughbred Power Boats Inc., 294 F.3d 640, 653-54 (5th Cir. 2000) (citing cases); In re Celotex Corp., 124 F.3d 619, 628 (4th Cir. 1997); Perry Drug Stores v. CSK Auto Corp., 93 Fed. Appx. 677, 681 (6th Cir. 2003) (unpublished disposition).  Courts have reasoned that a successor corporation that has assumed all of its predecessor's assets and liabilities has purposefully availed itself of all the opportunities of the predecessor corporation including the privilege of conducting business in a particular forum.  See Patin, 294 F.3d at 654; Perry Drug

13

Stores, 93 Fed. Appx. at 681.  In Patin, the Fifth Circuit reasoned that the successor corporation in that case was a "mere continuation" of the predecessor corporation, and because the two corporations were essentially the same entity, the jurisdictional contacts of the predecessor were the jurisdictional contacts of the successor.  Patin, 294 F.3d at 653.  However, when a successor corporation obtains less than the sum total of a predecessor's assets, courts do not impute the predecessor's jurisdictional contacts to the successor corporation.  See Purdue Research Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d 773 (7th Cir. 2003); see also Rogers v. 5-Star Management, Inc., 946 F.Supp. 907, 913 (D.N.M. 1996) (Black, J.) (personal jurisdiction over corporate assignor does not establish personal jurisdiction over corporate assignee); cf. City of Richmond v. Madison Management Group, Inc., 918 F.2d 438 (4th Cir. 1990) (jurisdictional contacts of seller corporation were imputed to purchaser corporation even though purchase involved only specific assets and seller corporation continued in business after sale when the purchasing corporation assumed the name of the selling corporation as part of the sale).

     Assuming for purposes of this motion only that this Court could properly exercise in personam jurisdiction over Roberts Wireless, the Court concludes that the jurisdictional contacts of Roberts Wireless cannot be imputed to RTC and Roberts Tower based on the transfer by Roberts Wireless of the tower assets and liabilities that were the subject of the contract between SWAT and Roberts Wireless.  Roberts Wireless did not merge with RTC and Roberts Tower.  In fact, it is uncontested that Roberts Wireless merged with another group of companies referred to in this case as the Alamosa Companies.  RTC and Roberts Tower did not acquire all of the assets and liabilities of Roberts Wireless.  Thus, RTC and Roberts Tower are not a "mere continuation" of Roberts Wireless.  RTC and Roberts Tower are more appropriately characterized, for purposes

of this motion only, as an assignee of the contract between SWAT and Roberts Wireless. As such, and in accordance with the above cited law, the jurisdictional contacts of Roberts Wireless cannot be imputed to RTC and Roberts Tower, and this Court cannot exercise personal jurisdiction over these Defendants on the basis of successor corporation liability.

The motion by RTC and Roberts Tower for dismissal based on this Court's lack of personal jurisdiction asks that this Court dismiss SWAT's Complaint. At the time the motion was filed, RTC and Roberts Tower were the only named Defendants in the action. Thus, dismissal of the Complaint would have been appropriate at that time based on the Court's conclusion that it lacks in personam jurisdiction over both these Defendants. However, since the filing of RTC and Roberts Tower's motion, this case was consolidated with a case in which a Complaint was filed naming RTC, Roberts Tower and a third Defendant, Roberts Wireless. Having determined that RTC and Roberts Tower may not be brought into New Mexico to answer for this cause of action, the Court will dismiss these Defendants but will not dismiss the Complaint.

Having concluded that the Court cannot exercise personal jurisdiction over Roberts Tower or RTC, the Court need not address at the urging of these Defendants whether venue is proper in this Court. However, the remaining Defendant, Roberts Wireless, is not foreclosed from raising this issue in the future.

**CONCLUSION**

IT IS THEREFORE ORDERED that the Motion of Defendants Roberts Tower Company, LLC & Roberts Tower Company to Treat Certain Affidavit Evidence Tendered by Plaintiff as

Inadmissible [Docket No. 23] is hereby GRANTED IN PART and DENIED IN PART as set forth above.

IT IS FURTHER ORDERED that the Motion of Defendants Roberts Tower Company, LLC & Roberts Tower Company to Dismiss the Complaint for Lack of Personal Jurisdiction and Improper Venue [Docket No. 3 in Civil No. 04-1126] is GRANTED IN PART in that Defendant Roberts Tower Company LLC and Defendant Roberts Tower Company are HEREBY DISMISSED as Defendants to this action.  The motion is DENIED IN PART in that the Complaint in this action will not be dismissed.

_____
UNITED STATES DISTRICT JUDGE